UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LUIS AGUILAR,

                Plaintiff,

                                                    DECISION AND ORDER

                                                    Case No. 12-CV-6376-FPG

v.

PAULA WASSINK, RN;
SALLEH ABBASEY, MD;
JADOW RAO, MD,
                Defendants.

_____

## I.    Background

*Pro se* Plaintiff Luis Aguilar ("Plaintiff"), a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), on September 17, 2012, filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights by Defendants Paula Wassink, RN ("Nurse Wassink"); Salleh Abbasey, MD ("Dr. Abbasey"), and Jadow Rao, MD ("Dr. Rao"), employees of DOCCS assigned to the Attica Correctional Facility ("Attica") at the time of the incidents in question, based upon the "denial of medical treatment, medical negligence and mental anguish, pain and suffering, psychological distress" stemming from continuing problems with a "chalazion" on his lower left eyelid which have resulted in a partial loss of vision. ECF No. 4. Specifically, the Amended Complaint seeks "monetary damages" and "proper medical treatment at the expense of New York State." *Id.*

Subsequently, Defendants filed a Notice of Motion (ECF No. 12), Rule 56 Statement (ECF No. 12-1), Notice to Pro Se Litigant Opposing Motion for Summary Judgment[1] ("Pro Se Litigant Notice," ECF No. 12-2), Declaration of Jadow Rao, MD[2] ("Rao Declaration," ECF No.

---

[1] Attached as Exhibit A at page 6 of the Pro Se Notice is a copy of Defendants' "Rule 56.2 Notice to Pro Se Litigant Opposing Summary Judgment," adopted effective May 1, 2003, which states in pertinent part:

Notice to Pro Se Litigant Opposing Motion For Summary Judgment

Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements which may include plaintiff's own statements, must be in the form of affidavits. Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment.

Any issue of fact that plaintiff whishes [sic] to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial. Pursuant to Rule 7.1(e) and 56.1 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to file and serve the following papers in opposition to the motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried followed by citation to admissible evidence. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court. If plaintiff has any questions, he/she may direct them to the Pro Se Office. Plaintiff must file and serve any supplemental affidavits or materials in opposition to defendant's motion no later than the date they are due as provided in Rule 56.1(e) of the Local Rules of Civil Procedure for the Western District of New York.

[2] By Letter Order entered on February 14, 2013, Magistrate Judge Marian W. Payson granted Defendants' request for permission to file Plaintiff's medical records and any other confidential records manually and under seal in order to preserve Plaintiff's confidentiality. ECF No. 11. Exhibits A, B, C, D, and E pertaining to Dr. Rao's Declaration were filed in accordance with this Letter Order. ECF No. 13.

12-3), Declaration of Paula Wassink, RN[3] ("Wassink Declaration," ECF No. 12-4), Declaration of Sallah Abbasey, MD[4] ("Abbasey Declaration," ECF No. 12-5), and Memorandum of Bernard F. Sheehan, Assistant Attorney General (ECF No. 12-6), seeking summary judgment dismissing the action pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there existed no genuine dispute as to any material fact and asserting their entitlement to judgment as a matter of law. Fed. R. Civ. P. 56. Defendants also filed Affidavits of Service reflecting service of each of these documents upon Plaintiff by mailing them via the United States Postal Service to his then address, Marcy Correctional Facility, P.O. Box 3600, 9000 Old River Road, Marcy, New York 13403. ECF No. 12-1, pp 9; ECF No. 12-2, pp 3; ECF No. 12-3, pp 6; ECF No. 12-4, pp 4; ECF No. 12-5, pp 5; ECF No. 12-6, pp 17.

Thereafter, this Court entered a Motion Scheduling Order & Notice to Pro Se Plaintiff ("Scheduling Order & Pro Se Notice," ECF No. 14), which was sent to Plaintiff via the United States Postal Service at Marcy Correctional Facility, P.O. Box 3600, 9000 Old River Road, Marcy, New York 13403, notifying him of the filing of Defendants' summary judgment motion and that he "must submit any supplemental affidavits or materials in opposition to defendant's motion no later May 30, 2013." The Scheduling Order & Pro Se Notice further notified Plaintiff that

> "THE CLAIMS PLAINTIFF ASSERTS IN HIS COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE DOES NOT RESPOND TO MOTION by filing his own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. In short,

---

[3] See n.2 above. Exhibits A and B pertaining to Nurse Wassink's Declaration were filed in accordance with this Letter Order. ECF No. 13.

[4] See n.2 above. Exhibits A and B pertaining to Dr. Abbasey's Declaration were filed in accordance with this Letter Order. ECF No. 13.

> Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendants and raising issues of fact for trial. Any witness statements, which may include plaintiffs own statements, must be in the form of affidavits. Plaintiff may submit affidavits that were prepared specifically in response to defendants' motion for summary judgment. Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendants. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendants, the Court may accept defendants' factual assertions as true. Judgment may then be entered in defendants' favor without a trial. Pursuant to Rules 7.1(e) and 56 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to submit the following papers in opposition to this motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried. In the absence of such a statement by plaintiff, all material facts set forth in defendants' statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.

ECF No. 14. Should Plaintiff have questions, the Scheduling Order & Pro Se Notice directed him to contact the Pro Se Office. *Id.*

Ostensibly, upon receiving the Court's Scheduling Order & Pro Se Notice, Plaintiff responded to the motion for summary judgment by timely filing his Reply to Request for Dismissal ("Plaintiff's Response") on May 16, 2013, in letter form consisting of two pages, stating as follows, in relevant part:

> I Luis Aguilar duly swore that the following are true and correct. This affidavit[s] is in responds to defendants['] motion for summary judgment filed on February 15, 2013. I Luis Aguilar would like to ask the courts to decide this case with a trial, based on written materials including affidavits, and medical records that I have included as exhibits submitted in support of my motion. I am not simply relying upon the allegations in the complaints. The medical records are evidence, to which I have provided to the courts, will show and prove that the defendants failed to provide me with the proper medical care which caused my blurry vision on my left eye. Further, in the exhibits that I've provided to the courts it clearly shows that I needed an additional surgery, which the defendants ignored, which also led to a transfer to Marcy Correctional Facility on 4/9/12. Because the defendants failed to put a medical hold on any transfers, I was unable to get the surgery on my left eye. I continue to have problems with my vision.

ECF No. 15. The contents of this letter were not sworn before a Notary Public, and notwithstanding Plaintiff's statements to the contrary, the letter is not accompanied by any written materials, including affidavits and medical records as exhibits supporting the claims raised in the Amended Complaint as required by the Court's Scheduling Order. Plaintiff states that he is not simply relying on the allegations in the complaints. For the reasons set forth herein below, Defendants' summary judgment motion is granted and the Amended Complaint is dismissed with prejudice.

## II. Discussion

### A. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is "material" if it might affect the outcome of the suit under governing law." *Id.*

Summary judgment is appropriate "[w]here the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.

The Second Circuit has offered guidance in the discernment of genuine issues of material fact, stating: "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Duse v. International Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) (citing, *e.g.*, *Anderson*, 477 U.S. at 255). Although the district court must view the evidence in favor of the nonmoving party, "'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 252) (internal alterations and emphasis omitted). Reliance by the nonmoving party on "conclusory allegations or unsubstantiated speculation" is insufficient to defeat a motion for summary judgment. *Id.* at 554 (quoting *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

Where, as in the present circumstances, the party opposing summary judgment is *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (quoting *Corcoran v. New York Power Authority*, 202 F.3d 530, 536 (2d Cir. 1999)). This liberalized approach to *pro se* pleadings notwithstanding, "proceeding *pro se* does not otherwise relieve [opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-Civ.-8594(LAP), 2002 U.S. Dist. LEXIS 25166, at *5 (S.D.N.Y. Jan. 9, 2003). *See also Stinson v. Sheriff's Dept. of Sullivan County*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the "liberal construction" accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

Pursuant to Rule 56(e), if a party fails to comply with the requirements of Rule 56(c) by failing to properly support an assertion of fact or failing to properly address another party's assertion of fact, the court may: (1) give the party an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion for summary judgment; (3) grant summary judgment if the motion and supporting materials, including any facts considered undisputed, show that the movant is entitled thereto; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e). Furthermore, Rule 56 of the Western District's Local Rules of Civil Procedure states that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." L.R.Civ.P. 56(a)(2). The clear import of these rules is that "a party faced with a summary judgment motion 'may not rest upon the mere allegations or denials' of the party's pleading and if the party does not respond properly, 'summary judgment, if appropriate, shall be entered' against him." *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)).

As stated earlier herein, both the Court and Defendants served prior notice on Plaintiff regarding the consequences of failing to comply with Rule 56, including that the Court may accept Defendants' factual assertions as true if he did not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by Defendants, and may enter judgment in Defendants' favor without a trial. Since Plaintiff has failed to do so, the Court may now consider the Defendants' assertions of fact to be undisputed and proceed to determine, based on those facts, whether summary judgment is warranted.

## B. Eighth Amendment

Plaintiff alleges as the constitutional basis for his § 1983 action the denial of medical treatment, medical negligence, mental anguish, pain and suffering, and psychological distress due to the denial of medical treatment for an eye condition known as a "chalazion." ECF No. 4. Construing Plaintiff's allegations to suggest the strongest possible arguments, he is alleging a violation of the Eighth Amendment due to inadequate medical treatment. The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," U.S. CONST. amend. VIII, and this prohibition includes punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To a establish an Eighth Amendment claim for inadequate medical treatment or care, a plaintiff must prove that the defendant(s) acted with "deliberate indifference to [his] serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), as distinguished from offering mere proof of "negligen[ce] in diagnosing or treating a medical condition." *Id.* at 106; *see also Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

The deliberate indifference standard is comprised of objective and subjective components. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* (internal quotation marks omitted). Assessment of this objective component requires a court to determine whether the inmate was actually deprived of adequate medical care, *i.e.*, in violation of the prison official's duty to provide reasonable care, *and* whether this inadequacy in medical care is sufficiently serious to have caused or will likely cause harm, if any, to the inmate. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2006) (internal citations omitted). "The objective component of an Eighth Amendment

claim is ... [necessarily] contextual and fact-specific, as such the serious medical need inquiry must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (internal citation and quotation marks omitted). Factors considered relevant in determining the existence of a serious medical condition include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (1998) (citations omitted). A deprivation of medical treatment can occur by prisoner officials unnecessarily delaying or interrupting medical care. *See Smith v. Carpenter*, 316 F.3d at 185. When the prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court addresses its seriousness inquiry to "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.*

"Subjectively, the charged official must act with a sufficiently culpable state of mind," *i.e.*, "something more than mere negligence," and "the equivalent of criminal recklessness." *Hathaway v. Coughlin*, 99 F.3d at 553. Thus, under the subjective component, an official acts with the requisite deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837). No claim of deliberate indifference under the Eighth Amendment is stated by "mere allegations of negligent malpractice." *Estelle v. Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to

state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). *Id.*

Courts have recognized that not every claim of inadequate medical treatment made by a prisoner states an Eighth Amendment violation. *See Salahuddin v. Goord*, 467 F.3d at 279. An inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth amendment violation." *Chance v. Armstrong*, 143 F.3d at 703. "The essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

### 1. Plaintiff's Amended Complaint Allegations

The Amended Complaint[5] sets forth Plaintiff's inadequate medical treatment claim, alleging as follows:

> On or about 10/1/2011, I grew an infection on my left lower eyelid which is considered to be a "Hardeolum" which cleared with antibiotics. I also developed a "chalazion" on my left lower eyelid in which was partially surgically removed. During this time I was seeking medical attention for several months and was denied treatment. By the time I was seen by a ophthalmologist, my condition and the medical neglect by the medical professional had caused some loss of vision in my left eye. I continue to seek medical attention and have been denied although it is obvious my condition persist.

Plaintiff describes this condition, which had occurred five times previously, as follows: "My eye gets red from irritation, then I experience on my eyelid an inflamed gland which is called a 'Chalazion.' It is similar to a sty, but a 'Chalazion' is more serious and has to be surgically removed." Further, specifically regarding these Defendants, the Amended Complaint states that

---

[5] The Amended Complaint outlines additional allegations against certain individuals employed at Attica during the relevant period who may have denied him medical treatment for the chalazion, but he has not designated them as defendants in this action. Furthermore, Plaintiff clearly states that Dr. Rafael Medina, and the medical staff at Marcy Correctional Facility to which he was transferred on April 9, 2012, and where he continues to experience problems with his eye, are not part of his claim in this case.

when Plaintiff saw Nurse Wassink in October 2011, she informed him that he had a chalazion that needed to be surgically removed, but because it was not an emergency, he could not have it done. After Plaintiff stated that his "health and vision should be considered an emergency," Nurse Wassink called for the opinion of Dr. Rao who tried to convince him not to have the chalazion removed and, instead, "prescribed some medication pills" for his eye, stating that he wasn't going to put in a referral for Plaintiff to see an ophthalmologist. Subsequently, on January 9, 2012, Plaintiff saw Ophthalmologist Rafael Medina who partially removed the chalazion, informing Plaintiff that it couldn't be completely removed because it sat on his eyelid too long without being treated, damaging his lower eyelid. As planned, on February 29, 2012, Plaintiff was seen by the same ophthalmologist and was told that another surgery was necessary and would be scheduled. Thereafter, in March 2012, after experiencing irritation in his left eye and blurry vision, Plaintiff was scheduled to see Dr. Abbasey who, without looking at Plaintiff's eye, stated "nothing was wrong with [his] eye." Plaintiff alleges that Dr. Abbasey also denied his requests "for something to relieve [the] irritation" and to "be seen by an ophthalmologist asap," and then demanded that Plaintiff leave the room. On April 9, 2012, Plaintiff was transferred to Marcy Correctional Facility.

### 2. Defendants' Summary Judgment Motion

The essence of the summary judgment motion before the Court is that Plaintiff's deliberate medical indifference claims should be dismissed because he has failed to satisfy the objective component in that he does not have a sufficiently serious medical need and has failed to satisfy the subjective component due to his failure to demonstrate that these Defendants acted with the requisite state of mind. Moreover, according to Defendants, they provided adequate and appropriate medical care to Plaintiff on all relevant occasions. Defendants have attached the

supporting declarations of Nurse Wassink, and Drs. Abbasey and Rao, and the Court has reviewed the sealed exhibits consisting of Plaintiff's medical health records.

In their statement of material facts (ECF No. 12-1), Defendants state that no genuine issue of fact exists to be tried given the undisputed facts. During the relevant period, Drs. Rao and Abbasey, both physicians licensed to practice medicine in New York State were assigned to Attica as DOCCS employees (*Id.* ¶¶ 4-9), and Nurse Wassink, a registered nurse licensed to practice medicine in New York State, was also assigned to Attica as a DOCCS employee (*Id.* ¶¶ 1-3).

Dr. Rao saw Plaintiff in connection with his eye on December 13, 2011, at which time, Plaintiff, who had complained of chalazions[6] before, complained of a "chalazion" on his left lower eyelid and presented with an infection of his eye (hardeolum) and also with what appeared to be a cyst-like lesion near the left lower eyelid. *Id.* ¶¶ 14-17. Dr. Rao never tried to convince Mr. Aguilar not to have the chalazion removed. *Id.* ¶ 56. Due to the infection, Plaintiff was prescribed antibiotic drops because the infection needed to be cleared before there could be any attempts to remove the lesion/chalazion on his left lower eyelid. *Id.* ¶¶ 18-19. Plaintiff used the antibiotic drops, the infection cleared, and on December 13, 2011, Dr. Rao recommended to Albany that Mr. Aguilar be referred to an ophthalmologist to excise the lesion/chalazion on his left lower eyelid, which approval was granted. *Id.* ¶¶ 20-22, 57. Following this approval, on January 9, 2012 Plaintiff saw an ophthalmologist, Dr. Rafael Medina, who excised the lesion and sent it for biopsy, which found no carcinoma but findings consistent with the diagnosis of a chalazion. *Id.* ¶¶ 22-24. Dr. Medina was unable to remove the entire chalazion because it was close to Plaintiff's eye. *Id.* ¶ 25.

---

[6] A chalazion is a "bump on the eyelid." ECF No. 12-1, ¶ 12.

Nurse Wassink, who saw Plaintiff on January 20, 2012[7] when he picked up and signed for copies of his previously requested medical records, noted that Plaintiff's left lateral sclera, which is the white part of his left eye, was slightly reddened, but there was no swelling, and he told her he had a chalazion removed from his left eye. *Id.* ¶¶ 26-30. Upon Plaintiff's inquiry about whether he had another appointment, Nurse Wassink checked his medical records on the computer, and discovering that he did not, entered a referral for an appointment into the computer and also made a note of "PRI" to indicate that Plaintiff should be re-evaluated. *Id.* ¶¶ 26-34. Nurse Wassink never told Plaintiff that his chalazion had to be surgically removed, or that because the chalazion was not an emergency, he could not have surgery. *Id.* ¶¶ 52-53.

Dr. Abbasey, who then saw Plaintiff on February 6, 2012 in connection with complaints about discomfort in the area of his eye where he had the surgery and also said that artificial tears were not effective, examined Plaintiff's eye, noting that his wound appeared to be healing appropriately. *Id.* ¶¶ 35-37. On that date, Dr. Abbasey requested approval from Albany for Plaintiff to again be referred to the ophthalmologist who excised the chalazion, Dr. Rafael Medina who also had wanted follow up after surgery. *Id.* ¶¶ 38-39, 59. Dr. Abbasey never stated that nothing was wrong with Plaintiff and did not deny requests for a referral. *Id.* ¶¶ 58, 60. On February 29, 2012, Plaintiff saw Dr. Medina again as a follow up to his surgery. *Id.* ¶ 40. Plaintiff was then transferred to Marcy Correctional Facility. *Id.* ¶ 41.

According to Drs. Rao and Abbasey, the exam treatment and recommendation followed proper protocol and proper medical procedure for the following reasons: (1) a chalazion is not life threatening, so emergency surgery is not necessary; (2) surgery on chalazions are done on an elective basis; (3) at no time was Plaintiff in a life-threatening situation or in any danger; (4)

---

[7] Nurse Wassink saw Plaintiff on one other occasion, October 4, 2011, for "itchy feet," a complaint unrelated to his eyes. ECF No. 12-1 ¶¶ 13, 54, 55.

Plaintiff was not in extreme pain, nor did Dr. Rao or Dr. Abbasey see any evidence that he was in extreme pain in the records, though he may have been in some discomfort after the surgery; (5) Plaintiff's vision was not affected by the amount of time that passed between when he was first seen for the chalazion and when the chalazion was partially excised by Dr. Medina: (6) Plaintiff may have been uncomfortable after the surgery because of the lesion on his eyelid, but his vision should not have been affected — the chalazion is outside the eye so its removal would not have affected Mr. Aguilar's eyesight. *Id.* ¶¶ 42-51.

Defendants also state that at no point did any of the Defendants act in any way wantonly or maliciously towards Plaintiff, and they, along with the rest of the staff at Attica, properly addressed Plaintiff's medical needs. *Id.* ¶¶ 61-62.

As earlier stated, the Court may assume the truth of Defendants' factual allegations offered in support of the summary judgment motion, given Plaintiff's failure to properly respond to Defendants' motion. These facts demonstrate that Defendants did not act in violation of Plaintiff's rights.

Furthermore, I find that Defendants are entitled to summary judgment and the Amended Complaint should be dismissed, even without assuming the truth of Defendants' factual assertions. Under the circumstances presented in the case, Plaintiff's allegations demonstrate that rather than exhibiting deliberate indifference to a serious medical need in violation of the Eighth Amendment, Defendants appropriately responded to Plaintiff's complaints concerning a non-emergency eye infection and chalazion on his eyelid by successfully treating the infection with antibiotics and securing referrals for ophthalmological attention and elective surgical procedures for excision of the chalazion. In so doing, it cannot be said that Defendants acted with a sufficiently culpable state of mind so as to involve the unnecessary and wanton infliction

of pain, required to establish a violation under the Eighth Amendment for the denial of proper medical care. Essentially, Plaintiff's allegations amount to "mere disagreement over the proper treatment," which does not create a constitutional claim. *See Chance v. Armstrong*, 143 F.3d at 703.

### III. CONCLUSION

The motion for summary judgment filed by Defendants Paula Wassink, RN, Salleh Abbasey, MD and Jadow Rao, MD on February 15, 2013 (ECF No. 12), is hereby GRANTED. The Amended Complaint is dismissed with prejudice.

IT IS SO ORDERED.

Dated: March 31, 2014
      Rochester, New York

_____
Hon. Frank P. Geraci, Jr.
United States District Judge